CSD 1185 [10/01/12] Name, Address, Telephone No. & I.D. No.

Darren J. Devlin, Esq./CSB #176261
Law Office of Jason C. Tatman, A.P.C.
5677 Oberlin Drive, Suite 210
San Diego, CA 92121
760-512-1757

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re
Walter Alan Jahr and Claudine Emma Jahr

Debtor.

BANKRUPTCY NO. 16-07863-MM7

Community Restoration Corporation

Moving Party

RS NO. DJD-002

Walter Alan Jahr and Claudine Emma Jahr, Debtors; Christopher Barclay, Chapter 7 Trustee,

Respondent(s)

**NOTICE OF FILING OF A MOTION FOR RELIEF FROM AUTOMATIC STAY**

TO THE ABOVE NAMED RESPONDENT(S)[1]:

**YOU ARE HEREBY NOTIFIED** that a Motion for Relief from the Automatic Stay provided by § 362 of the Bankruptcy Code has been filed. If you object to the Court granting relief from the automatic stay as requested in the Motion, **YOU MUST, WITHIN 11[2] DAYS FOLLOWING THE DATE OF SERVICE OF THIS NOTICE OF MOTION ON YOU**:

1. Obtain a hearing date and time from the appropriate Courtroom Deputy for the judge assigned to this bankruptcy case. Determine which deputy to call by looking at the Bankruptcy Case No. in the above caption of this notice. If the case number contains the letter:

| | | | |
|---|---|---|---|
| - MM | - call (619) 557-7407 | - | DEPARTMENT ONE (Room 218) |
| - LA | - call (619) 557-6594 | - | DEPARTMENT TWO (Room 118) |
| - LT | - call (619) 557-6018 | - | DEPARTMENT THREE (Room 129) |
| - PB | - call (619) 557-5157 | - | DEPARTMENT FOUR (Room 328) |
| - CL | - call (619) 557-6019 | - | DEPARTMENT FIVE (Room 318) |

2. File with the Clerk of the Bankruptcy Court, at the address shown above, the original and one copy of:
   (a) an "OPPOSITION TO MOTION"[2] (for real or personal property, use Form CSD 1161 of this Court);
   (b) a "DECLARATION IN OPPOSITION TO THE MOTION"[2]; and
   (c) a separate "REQUEST AND NOTICE OF HEARING ON MOTION," using Form CSD 1186 of this Court (this form may be obtained from the Office of the Clerk);

3. Serve a copy of these documents on the [Attorney for the] Moving Party named in the upper left hand corner.

4. Serve a copy of these documents on each of the additional parties as required by Local Bankruptcy Rule 4001-3.

**IF YOU FAIL TO FILE WITH THE CLERK AND SERVE ON THE MOVING PARTY YOUR REQUEST FOR HEARING AND THE DECLARATION IN OPPOSITION TO MOTION WITHIN THE 11-DAY[2] PERIOD PROVIDED BY THIS MOTION, THE COURT MAY GRANT THE MOVING PARTY RELIEF FROM THE AUTOMATIC STAY WITHOUT FURTHER NOTICE TO YOU OR A HEARING.**

Dated: 03/13/2017

/s/Darren J. Devlin
[Attorney for] Moving Party

**ALL PLEADINGS RELATED TO THIS PARTICULAR RS ACTION MUST CONTAIN THE ABOVE CAPTION**

1Local Bankruptcy Rule 4001-2, printed on the reverse side, governs service of this notice.
2 If you were served electronically or by mail, you have three (3) additional days to take the above-stated actions as calculated by Fed. R. Bankr. P. 9006(f). Instructions for the Respondent and the date of service of this notice indicated in the Certificate of Service are printed on the reverse side.

 [Continued on Page 2]

1. **ALL PLEADINGS RELATED TO THIS PARTICULAR RS ACTION MUST CONTAIN THE ABOVE CAPTION.**
2. **INSTRUCTIONS TO RESPONDENT**: If you file a "Declaration in Opposition to the Motion," it must be signed by the respondent under oath; and
   (1) identify the interest of the respondent in the property;
   (2) state with particularity the grounds for the opposition;
   (3) if respondent is the debtor or the trustee, state the provable value of the property specified in the Motion and the amount of equity which would be realized by the debtor after deduction of all encumbrances; and
   (4) contain a statement as to competence of the declarant and the foundation for any opinion therein.
3. **INSTRUCTIONS TO MOVING PARTY**: Local Bankruptcy Rule 4001-2 provides that:
   "(a) A motion for stay relief. . . shall:
      "(1) name, as respondents, the debtor, the trustee, and other entities entitled to receive notice of default or notice of sale under applicable non-bankruptcy law governing foreclosure of real or personal property which is the subject of the motion, or the agents for such parties;
      "(2) state with particularity the relief or order sought, and the grounds for such relief or order;
      "(3) state the status of any pending foreclosure or repossession;
      "(4) if the basis of the motion is lack of equity or adequate protection, and value is relevant, state by declaration the provable value of the subject property and the amount of any known encumbrances. The declaration shall also contain a statement as to the competency of the declarant and the foundation for any opinion therein; and
      "(5) if the motion is brought for cause, state by declaration or other verified pleading the specific facts that constitute such cause.
   "(b) Failure to set forth the information required by this rule may be grounds for denial of the relief requested.
   "(c) The moving party shall serve the motion, together with Local Form CSD 1185, NOTICE OF FILING OF A MOTION FOR RELIEF FROM AUTOMATIC STAY, on the parties named in Local Bankruptcy Rule 4001-2(a)(1) above. In a chapter 11 or 12 case, a copy of the motion shall also be served on the United States Trustee."

**** MOTIONS FILED AFTER THE CASE IS CLOSED ARE NOT ENTITLED TO A REFUND OF FEES**

---

**[The below Certification of Service must accompany the Notice of Motion printed on the reverse and any motion for entry of a default order pursuant to Local Bankruptcy Rule 4001-5.]**

## CERTIFICATE OF SERVICE

I, the undersigned whose address appears below, certify:
That I am, and at all times hereinafter mentioned was, more than 18 years of age;

That on 13th day of March, 2017 [DATE OF SERVICE[3]], I served a true copy of the within NOTICE OF FILING OF A MOTION FOR RELIEF FROM AUTOMATIC STAY, together with a copy of the Motion for Relief from Stay and [describe any other papers]:

by [describe mode of service]: U.S. mail

on the following persons [set forth name and address of each person served] and/or as checked below:

[✓] Attorney for Debtor (or Debtor), if required:

Christopher R. Bush, 1930 S. Coast Highway #206, Oceanside, CA 92054
Walter Alan Jahr and Claudine Emma Jahr, 4792 Cubist Court, Oceanside, CA 92057
Christopher Barclay, P.O. Box 2819, La Mesa, CA 91943
Honorable Margaret M. Mann, United States Bankruptcy Court, 325 W. F Street, San Diego, CA 92101-6998

[✓] For Chpt. 11 & 12 cases:
UNITED STATES TRUSTEE
Department of Justice
402 West Broadway, Suite 600
San Diego, CA 92101

[ ] For ODD numbered Chapter 13 cases:
THOMAS H. BILLINGSLEA, JR., TRUSTEE
530 "B" Street, Suite. 1500
San Diego, CA 92101

[ ] For EVEN numbered Chapter 13 cases:
DAVID L. SKELTON, TRUSTEE
525 “B” Street, Suite 1430
San Diego, CA 92101-4507

I certify under penalty of perjury that the foregoing is true and correct.

Executed on 03/13/2017
(Date)

Darren J. Devlin, Esq. /s/Darren J. Devlin
(Typed Name and Signature)

5677 Oberlin Drive, Suite 210
(Address)

San Diego, CA 92121
(City, State, ZIP Code)

[3]This DATE OF SERVICE commences the time period for responding to Motion.

CSD 1160 [05/15/03]

Name, Address, Telephone No. & I.D. No.

Darren J. Devlin, Esq./CSB #176261
Law Office of Jason C. Tatman, A.P.C.
5677 Oberlin Drive, Suite 210
San Diego, CA 92121
760-512-1757
fax 760-230-5876

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re
Walter Alan Jahr and Claudine Emma Jahr
Debtor.

BANKRUPTCY NO. 16-07863-MM7

Community Restoration Corporation
Moving Party

RS NO. DJD-002

Walter Alan Jahr and Claudine Emma Jahr, Debtors; Christopher Barclay, Chapter 7 Trustee; Eerie County Real Property Tax Services,
Respondent(s)

## MOTION FOR RELIEF FROM AUTOMATIC STAY

☑ **REAL PROPERTY** ☐ **PERSONAL PROPERTY**

Movant in the above-captioned matter moves this Court for an Order granting relief from the automatic stay on the grounds set forth below.

1. A Petition under Chapter ☑ 7 ☐ 11 ☐ 12 ☐ 13 was filed on 12/30/2016.

2. Procedural Status:
   a. ☑ Name of Trustee Appointed *(if any)*: Christopher Barclay

   b. ☐ Name of Attorney of Record for Trustee *(if any)*:

   c. ☐ *(Optional)* Prior Filing Information:
   Debtor has previously filed a Bankruptcy Petition on:__________________.
   If applicable, the prior case was dismissed on: ________________________.

   d. ☐ *(If Chapter 13 case)*: Chapter 13 Plan was confirmed on __________________ or a confirmation hearing is set for ______________________.

Movant alleges the following in support of its Motion:

1. ☑ The following real property is the subject of this Motion:
   a. Street address of the property including county and state:

   19 Phyllis Avenue
   Buffalo, NY 14215-2823

   b. Type of real property (e.g., single family residence, apartment building, commercial, industrial, condominium, unimproved):

   SFR

   c. Legal description of property is attached as Exhibit A.

d. If a chapter 11 or 13 case and if non-payment of any post-petition payment is a ground for relief, attach the accounting required by Local Bankruptcy Rule 4001-2(a)(4) as Exhibit B.

e. *Fair market value of property as set forth in the Debtor's schedules: $ 48,954.00 .

f. *Nature of Debtor's interest in the property:

Owner

2. ☐ The following personal property is the subject of this Motion *(describe property)*:

a. Fair market value of property as set forth in the Debtor's schedules: $__________.

b. Nature of Debtor's interest in the property:

3. *Fair market value of property according to Movant: $ 48,954.00.

4. *Nature of Movant's interest in the property: 1st mortgage lienholder

5. *Status of Movant's loan:
   a. Balance owing on date of Order for Relief: $__________
   b. Amount of monthly payment: $ 314.11
   c. Date of last payment: __________
   d. If real property,
      i. Date of default: 06/15/2007
      ii. Notice of Default recorded on: __________
      iii. Notice of Sale published on: __________
      iv. Foreclosure sale currently scheduled for: __________
   e. If personal property,
      i. Pre-petition default: $__________ No. of months:__________
      ii. Post-petition default: $__________ No. of months:__________

6. *(If Chapter 13 Case, state the following:)*
   a. Date of post-petition default: __________
   b. Amount of post-petition default: $__________

7. Encumbrances:
   a. Voluntary encumbrances on the property listed in the Schedules or otherwise known to Movant:

| Lender Name | Principal Balance | (IF KNOWN) Pre-Petition Arrearages Total Amount - # of Months | | Post-Petition Arrearages Total Amount - # of Months | |
|---|---|---|---|---|---|
| 1st: Movant | | 31,254.26 | 115 | 1,723.33 | 3 |
| 2nd: | | | | | |
| 3rd: | | | | | |
| 4th: | | | | | |
| Totals for all Liens: | $ 0.00 | $ 31,254.26 | | $ 1,723.33 | |

b. Involuntary encumbrances of record (e.g., tax, mechanic's, judgment and other liens, lis pendens) as listed in schedules or otherwise known to Movant:
   ☐ See attached page, if necessary.

*Separately filed Declaration required by Local Bankruptcy Rule 4001-2(a)(5).

8. Relief from the automatic stay should be granted because:
   a. ☑ Movant's interest in the property described above is not adequately protected.

   b. ☑ Debtor has no equity in the ☑ real property ☐ personal property described above and such property is not necessary to an effective reorganization.

   c. ☐ The property is "single asset real estate", as defined in 11 U.S.C. § 101(51B), and 90 days (or ________ days as ordered by this court) have passed since entry of the order for relief in this case, and

      i. the Debtor/Trustee has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; and

      ii. the Debtor/Trustee has

         (1) ☐ not commenced monthly payments to each creditor whose claim is secured by the property (other than a claim secured by a judgment lien or by an unmatured statutory lien), or

         (2) ☐ commenced payments, but such payments are less than an amount equal to interest at a current fair market rate on the value of each creditors' interest in the property.

   d. ☐ *Other cause exists as follows *(specify)*: ☐ See attached page.

When required, Movant has filed separate Declarations pursuant to Local Bankruptcy Rule 4001-2(a)(5) and (6).

Movant attaches the following:

1. ☐ Other relevant evidence:

2. ☐ *(Optional)* Memorandum of points and authorities upon which the moving party will rely.

WHEREFORE, Movant prays that this Court issue an Order granting the following:

☑ Relief as requested.

☑ Other:
Waiver of B.R. 4001(a)(3)

Dated: 03/09/2017

/s/Darren J. Devlin
[Attorney for] Movant

*Separately filed Declaration required by Local Bankruptcy Rule 4001-2(a)(5).

Darren J. Devlin, Esq. [SBN 176261]
THE LAW OFFICES OF JASON C. TATMAN, A.P.C.
5677 Oberlin Drive, Suite 210
San Diego, CA 92121
Telephone: 760-512-1757
Facsimile: 760-230-5876
dd@nationwidereconveyance.com
Attorneys for Secured Creditor/Moving Party
Community Restoration Corporation, a non-profit corporation, by SN Servicing Corporation, its Attorney in Fact SN Servicing 323 5th Street
Eureka, CA 95501 (800) 603-0836

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>WALTER ALAN JAHR and CLAUDINE EMMA JAHR,<br><br>Debtors.<br><br>______________________________<br><br>Community Restoration Corporation, a non-profit corporation, by SN Servicing Corporation, its Attorney in Fact SN Servicing 323 5th Street Eureka, CA 95501 (800) 603-0836<br><br>Movant,<br><br>-vs-<br><br>WALTER ALAN JAHR and CLAUDINE EMMA JAHR, Debtors; Christopher Barclay, Chapter 7 Trustee,<br><br>Respondents. | Case No: 16-07863-MM7<br><br>R.S. No.: DJD-002<br><br>Chapter 7<br><br>**DECLARATION IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY**<br><br>*The Courtroom of the Honorable Margaret M. Mann* |

I, Kathy Watson, declare as follows:

1. I am employed as a Bankruptcy Asset Manager by Community Restoration Corporation, a non-profit corporation, by SN Servicing Corporation, its Attorney in Fact SN Servicing 323 5th Street Eureka, CA 95501 (800) 603-0836 ("Creditor"). In that capacity, I have

been charged with the responsibility for handling the collection of certain loans owned by Creditor which have become delinquent. I am the employee of Creditor who is primarily responsible for securing payment of Creditor's loan to Debtors Walter Alan Jahr and Claudine Emma Jahr ("Debtors").

2. I have custody and control of Creditor's business records and documents relating to its loan to Debtors. These records were prepared in the regular course of Creditor's business at or near the time of the act, condition, or event to which they relate. Such records were prepared in the ordinary course of business by Creditor by a person employed by Creditor who has personal knowledge of the event being recorded and who has a business duty to Creditor to make a record of such event.

3. On December 30, 2016, Debtors filed a voluntary Chapter 7 petition.

4. Christopher Barclay is the duly qualified and acting Chapter 7 Trustee.

5. On or about May 31, 2007, Debtors executed and delivered to Countrywide Home Loans, Inc. ("Countrywide"), a written Home Equity Credit Line Agreement and Disclosure Statement ("Agreement"), for value received. A true and correct copy of the Agreement is attached hereto as Exhibit "A" and is incorporated herein by this reference. Creditor is in possession of the original Agreement.

6. To secure repayment of the Agreement, on or about May 31, 2007, Debtors executed and delivered to Countrywide a Mortgage ("Mortgage"), secured by the real property located at 19 Phyllis Avenue, Buffalo, NY 14215-2823 ("Property"). The Mortgage was recorded in the Official Records of Eerie County, New York. A true and correct copy of the Mortgage is attached hereto as Exhibit "B" and is incorporated herein by this reference. The Agreement and Mortgage have been duly assigned to Creditor ("Assignments"). True and correct copies of the Assignments are attached hereto as Exhibit "C" and incorporated herein by reference. The current monthly payment is $314.11.

7. On June 15, 2007, Debtors defaulted under the terms of the Agreement by failing to make the monthly payment due on that date. Debtors have failed to make all consecutive monthly payments on the Agreement due thereafter to Creditor. Arrears now exist in the amount

of $32,977.59 representing one hundred and eighteen (118) payments, incurred fees and costs. Arrears are as follows:

| | |
|---|---|
| 6/15/07 – 5/15/12 payments at $134.99 each | $ 8,099.40 |
| 6/15/12 – 3/15/17 payments at $314.11 each | $18,218.38 |
| Late charges | $ 31.40 |
| Prior servicer corporate advance | $ 190.00 |
| Prior servicer escrow advance | $ 4,572.75 |
| Property taxes current | $ 709.86 |
| Property tax delinquent | $ 233.07 |
| Funds owed by borrower | $ 141.73 |
| Attorneys' fees and costs for this Motion | $ 781.00 |
| Total Arrearages | $32,977.59 |

8. The last payment made was ____________________, which was applied to the payment due May, 2007, payment.

9. The total principal amount due and owing to Creditor on the Agreement as of March 9, 2017, is $__________, excluding accrued interest, attorneys' fees, and costs.

10. I am informed and believe and thereon allege that based upon the Schedules and Statements filed in this case, the fair market value of the Property is no more than $48,954.00. A true and correct copy of the Schedule D is attached hereto as Exhibit D and incorporated herein by reference.

I have personal knowledge of the foregoing facts and if called upon as a witness I could and would competently testify thereto.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and as to those matters testified to on information and belief, I believe them to be true.

Executed this 10th day of March, 2017, at 2:46pm.

Kathy Watson

Community Restoration Corporation, a non-profit corporation, by SN Servicing Corporation, its Attorney in Fact SN Servicing 323 5th Street Eureka, CA 95501 (800) 603-0836

Prepared by: DANIEL WALLS

COUNTRYWIDE HOME LOANS, INC.

DATE: 05/31/2007
BORROWER: ALAN JAHR
CASE #:
LOAN #:
PROPERTY ADDRESS: 19 PHYLLIS AVE
BUFFALO, NY 14215-2823

Branch #:
2380 PERFORMANCE DR, BLDG D
RICHARDSON, TX 75082
Phone: (800)470-7640
Br Fax No.:

**HOME EQUITY CREDIT LINE AGREEMENT AND DISCLOSURE STATEMENT**

Date: 05/31/2007

This Home Equity Credit Line Agreement and Disclosure Statement ("Agreement") governs my Home Equity Credit Line Account ("Account") with you,
COUNTRYWIDE HOME LOANS, INC.
The words "I," "me" and "my" refer to the Borrower signing this Agreement. If more than one Borrower signs this Agreement, the words "I," "me" and "my" refer to all who sign, separately and together. The words "you" and "your" refer to
COUNTRYWIDE HOME LOANS, INC.

**1. LOANS: DRAW AND REPAYMENT PERIOD.** Subject to the limitations explained in this Agreement, upon my request for loans, you agree to lend money to me from time to time until the last day of the sixtieth (60th) consecutive calendar month following the date set forth above ("Initial Draw Period,") or until the last day of any renewed Draw Period, up to my Credit Limit indicated in paragraph 4 below. (You will not make any loans if my Account is sooner terminated or suspended under paragraphs 11.B, 11.D, 12.B or 15.A below.) You will not make any loan before the fourth business day following the signing of this Agreement.

I agree that prior to the end of the Initial Draw Period, you have the right to review my Account to decide whether such Initial Draw Period will be renewed. Unless you have sent me written notice not later than the sixtieth (60th) day before the Initial Draw Period ends that you have decided not to renew such Initial Draw Period, such Initial Draw Period will automatically renew for one additional sixty (60) month period, and the Draw Period on my Account shall thereafter be considered to be 120 months for purposes of this Agreement. If the Initial Draw Period is not renewed, then the Draw Period on my Account shall thereafter be considered to be 60 months for purposes of this Agreement.

After the Draw Period ends, I will no longer be able to obtain loans and then must pay the outstanding balance over the specified Repayment Period unless my Account is sooner terminated under paragraph 12.B below, in which case my Account is due and payable in full at the time of such termination. The Repayment Period shall be 180 months.

**2. MAKING LOANS.** You will make loans under this Agreement by (i) honoring Equity Credit Line Checks you provide to me requesting advances of at least $250; (ii) paying closing costs and finance charges in accordance with paragraph 7.C below; (iii) paying certain other amounts on my behalf in accordance with my disbursement authorization provided to you at or before the time I sign this Agreement; (iv) paying any unpaid taxes, assessments, property insurance or other sums as provided under this Agreement or the Mortgage; or (v) any other method or procedure you establish.

**3. PROMISE TO PAY; MINIMUM PAYMENT; METHOD OF PAYMENT.**

A. I promise to pay to your order, when and as due, all loans made under this Agreement, plus all unpaid finance charges, insurance premiums, collection costs and other charges I owe to you now or in the future. I agree to make my payments in the manner specified in my periodic statement, and if I do so such payments will be credited as of the day of receipt.

B. At a minimum, you will send me a periodic statement monthly. The periodic statement will show all Account activity during the billing cycle and contain other important information, including my "New Balance," my Annual Percentage Rate, the amount of my "Minimum Payment Due," my "Payment Due Date" and the place and manner of making payments.

C. I may pay all or any part of my "New Balance" at any time, without penalty. If I pay my entire "New Balance" shown on my periodic statement for any billing cycle by the "Payment Due Date," any periodic finance charge incurred from the first day of the next billing cycle until the posting of my payment will appear on my periodic statement for the next billing cycle.



[redacted]

"ORIGINAL"

[redacted]

LOAN #:

D. Unless you terminate my Account and require immediate payment of the entire outstanding balance as provided in paragraph 12.B below, I must pay you at least the "Minimum Payment Due" for each billing cycle by the "Payment Due Date" shown on my periodic statement.

E. During the Draw Period, my "Minimum Payment Due" equals all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due." My "Minimum Payment Due" during the Draw Period will not reduce the principal balance that is outstanding on my account.

F. During the Repayment Period, if the Draw Period on my Account is 60 months or 120 months, my "Minimum Payment Due" equals 1/180th of the outstanding principal balance of my Account as of the last day of the Draw Period plus all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due." If the Draw Period on my Account is 36 months, my "Minimum Payment Due" during the Repayment Period equals 1/120th of the outstanding principal balance of my Account as of the last day of the Draw Period plus all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due."

**4. CREDIT LIMIT.** My Credit Limit under this Agreement is $ 43,200.00 . I promise not to request a loan which will cause the unpaid principal balance of my Account to exceed my Credit Limit. You can increase the Credit Limit at any time without prior notice to me. You can refuse to make loans that cause my obligations under this Agreement to exceed my Credit Limit. You will make loans on my Account based on the "Available Credit Limit" shown on my most recent periodic statement. However, I agree that when I make payments on my Account by check or other non-cash method, you reserve the right to make loans based on the "Available Credit Limit" shown on the last periodic statement issued prior to the most recent periodic statement. In addition to each "Minimum Payment Due," I must pay immediately, without notice or demand from you, any part of the principal balance of my Account that exceeds my Credit Limit.

**5. ANNUAL PERCENTAGE RATE.**

☐ A. The initial Daily Periodic Rate is N/A %. The initial **ANNUAL PERCENTAGE RATE** is N/A %. These rates are "discounted" rates. This means that these rates are lower than the rates that would be in effect if the formula set forth in paragraph 5.C below had been used, in which event the initial Daily Periodic Rate would be N/A % and the initial **ANNUAL PERCENTAGE RATE** would be N/A %. These discounted rates will be in effect from the date of this Agreement until N/A . Thereafter, the Daily Periodic Rate and the Annual Percentage Rate will be determined using the formula set forth in paragraph 5.C below.

☒ B. The initial Daily Periodic Rate is 0.02397 % and the initial **ANNUAL PERCENTAGE RATE** is 8.750 %. These rates are not discounted.

C. My Annual Percentage Rate and Daily Periodic Rate may increase or decrease (the first day after my "discounted" rate has expired, if applicable) according to the following procedure: The **ANNUAL PERCENTAGE RATE** shall be the "Index" plus a "Margin," and may be rounded to the nearest fraction of a percent. The "Index" will be the highest Prime Rate as published in the "Money Rates" table of The Wall Street Journal as of the first business day of the calendar month. The "Margin" is equal to the number of percentage points disclosed in paragraph 5.D below. Each billing cycle will end on the last day of the calendar month. Any new Index value shall be effective as of the first day of the billing cycle in which such new Index value is established.

Upon a change in the Index, any resulting change in my Daily Periodic Rate and Annual Percentage Rate will take effect without prior notice to me, and will apply to new loans and to the outstanding principal balance in my Account. The new Annual Percentage Rate and Daily Periodic Rate will apply to my then existing unpaid principal balance and all new loans I obtain until my Annual Percentage Rate and Daily Periodic Rate change again. The Daily Periodic Rate at any time equals the **ANNUAL PERCENTAGE RATE** divided by 365.

D. The "Margin" to be used under paragraph 5.C above to determine my **ANNUAL PERCENTAGE RATE** is 0.500 percentage points.

E. The Annual Percentage Rate is a simple interest rate. The Annual Percentage Rate includes only interest and not other costs. The **ANNUAL PERCENTAGE RATE** will never increase above 11.950% or the maximum rate permitted by law, whichever is less.

F. If the Daily Periodic Rate (and the corresponding Annual Percentage Rate) increases, I will have to pay additional periodic finance charges and, as a result, I will have to pay larger "Minimum Payments."

"ORIGINAL"

LOAN #:

**6. FINANCE CHARGE.** I agree to pay a finance charge on my Account as explained below.

A. Periodic **FINANCE CHARGE.**

(1) A loan represented by an Equity Credit Line Check will be posted to my Account on the date that such a check is presented to you for payment. The periodic finance charge begins to accrue on my Account from the time a loan is posted to my Account. You compute the periodic finance charge on my Account by applying the Daily Periodic Rate to the "Average Daily Balance" in my Account (including current transactions). To determine the periodic finance charge for any billing cycle, the "Average Daily Balance" is multiplied by the Daily Periodic Rate, then this product is multiplied by the number of days in the billing cycle.

(2) To get the "Average Daily Balance," you take the beginning principal balance of my Account each day, add any new loans and subtract any principal payments or credits. This gives you the Daily Balance. Then you add up all the Daily Balances for the billing cycle and divide by the total number of days in the billing cycle. This gives you the "Average Daily Balance."

B. Other **FINANCE CHARGE.**

(1) Origination Fee **FINANCE CHARGE.**

I agree to pay an Origination Fee **FINANCE CHARGE** of $ 0.00 at the time I sign this Agreement.

| | |
|---|---|
| ____________________ | $ ________ |
| ____________________ | $ ________ |
| ____________________ | $ ________ |
| ____________________ | $ ________ |
| ____________________ | $ ________ |

(2) Broker Fee **FINANCE CHARGES.**

I agree to pay Broker Fee **FINANCE CHARGES** of $ N/A at the time I sign this Agreement.

| | |
|---|---|
| ____________________ | $ ________ |
| ____________________ | $ ________ |
| ____________________ | $ ________ |
| ____________________ | $ ________ |
| ____________________ | $ ________ |

(3) Annual Maintenance Fee **FINANCE CHARGE.**

☐ I agree to pay an annual maintenance fee **FINANCE CHARGE** of $ 0.00 which you will charge to my Account on the first anniversary of this Agreement and every anniversary date thereafter, whether or not I have used or continue to use my Account; except that such fee shall be waived for the entire term of this Agreement if I meet both of the following conditions: (a) I maintain an average outstanding daily balance which does not fall below $ from the date of this Agreement through the first anniversary of this Agreement; and (b) I make each monthly payment during that period on or before the due date for each such payment. You will not rebate any portion of the annual fee if my Account is terminated or suspended before the end of any annual period.

☐ I will not be charged an annual maintenance fee **FINANCE CHARGE** on this loan.

**7. OTHER CHARGES.**

A. I agree to pay each of the charges listed below, which shall constitute additional indebtedness under this agreement. Any charges assessed will be shown on my periodic statement for the billing cycle in which such charge is assessed:

(1) If I fail to make my "Minimum Payment Due" within fifteen (15) days of the "Payment Due Date," I agree to pay a late fee of 2% of the late payment.

(2) I agree to pay a Return Item Fee of $15 for each check you receive in payment of my Account which is returned unpaid upon second presentment.

"ORIGINAL"

LOAN #:

B. I agree to pay you or my broker the following closing costs at or before the time I sign this Agreement:

| | |
|---|---|
| Full Appraisal | $ 310.00 |
| Credit Report Fee | $ 35.00 |
| Title Endorsements | $ 60.80 |
| Title Ins/ALTA Policy | $ 358.00 |
| Recording | $ 118.00 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| LESS Amounts Paid by Lender | $ 0.00 |
| Total Paid by Borrower | $ 1,855.80 |

* The cost of title insurance and mortgage recording tax is based on the maximum Credit Limit available to me as a borrower, whether advanced or not.

C. I may elect to pay the closing costs described in paragraph 7.B above and the finance charges described in paragraph 6.B above in cash or by check at or before the time I sign this Agreement or I may elect to finance some or all of such costs and finance charges by allowing you to make a loan under my Account to pay some or all of such costs and finance charges.

**8. REAL PROPERTY SECURITY.** To secure the payment of all loans I obtain and the performance of all promises I make in this Agreement, I and all co-owners are giving you a Mortgage (the "Mortgage") covering my dwelling located at

19 PHYLLIS AVE, BUFFALO, NY 14215-2823

(the "Real Property"). The Mortgage is security for my current and future obligations under this Agreement. I will continue to be obligated to make payment to you under this Agreement even if the Real Property is damaged or destroyed and whether or not any insurance proceeds are available. DEFAULT IN THE PAYMENT OF ANY LOANS MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOANS. UNDER FEDERAL LAW, I MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF I HAVE THIS RIGHT, YOU ARE REQUIRED TO PROVIDE ME WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH I CAN EXERCISE THIS RIGHT.

**9. SECTION INTENTIONALLY OMITTED.**

**10. PROPERTY INSURANCE.** I agree to obtain and maintain property insurance against loss or damage to the Real Property, in such amounts, against such risks (including, but not limited to, flood damage insurance required by law), and according to such terms as you may require in the Mortgage or otherwise. I may obtain property insurance from any company of my choice that is acceptable to you. If the amount of the premiums for property insurance increases at any time during the term of my Account, I agree to pay any such increase(s).

**11. YOUR RIGHTS TO TEMPORARILY SUSPEND MY LOANS OR REDUCE MY CREDIT LIMIT.**

A. You may take the actions listed in paragraph 11.B below during the period that any of the following events or conditions occur:

(1) the value of the Real Property declines significantly below its appraised value for the purposes of my Account;

(2) you reasonably believe that I will not be able to meet the repayment requirements under my Account due to a material change in my financial circumstances, such as the filing of a bankruptcy petition by or against me;

(3) I am in default of any material obligation of this Agreement, such as my important obligations listed in paragraph 13 below;

(4) government action (such as enactment of a state usury law) prevents you from imposing the Annual Percentage Rate provided for in this Agreement;

(5) government action (such as imposition of a tax lien) impairs the priority of the lien of the Mortgage such that the value of the lien of the Mortgage is less than 120% of my Credit Limit;



"ORIGINAL"

Initials

LOAN #:

(6) the maximum Annual Percentage Rate set forth in paragraph 5.E above is reached.

(7) the creditor is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice.

B. During the period in which a condition described in paragraph 11.A above occurs, you may refuse to make any additional loans or reduce my Credit Limit or do both. You will mail or deliver written notice to me after you suspend my Account or reduce my Credit Limit and this notice will describe the specific reasons for your action. You are obligated to reinstate my credit privileges when the condition(s) which caused the suspension or reduction have been cured or have changed, provided I have notified you in writing, explaining in detail and documenting how the condition(s) have been cured or have changed and no new condition(s) under paragraph 11.A above or 12.A below have occurred.

C. Before reinstating my right to obtain loans, or restoring my Credit Limit, you may conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) as you deem appropriate, and you may require me to reimburse you on demand for any costs you actually incur for obtaining credit reports and appraisals. You may take these steps to verify that (i) the condition(s) that caused your suspension of my loans or reduction of my Credit Limit no longer exist, and (ii) the priority of the lien of the Mortgage is not impaired.

D. If more than one Borrower signs this Agreement and any such Borrower requests that you cease making loans, you may comply with such a request. All Borrowers who have signed this Agreement must join in any request to reinstate the loans for such request to be effective. If all such persons subsequently request reinstatement of the loans, you must honor such a request unless a condition listed in paragraph 11.A above or 12.A below has occurred.

E. If an event or condition described in paragraph 11.A above occurs which is also an event or condition described in paragraph 12.A below, your rights and remedies described under paragraph 12.B below apply and supersede your rights described in this paragraph 11.

**12. YOUR RIGHTS TO TERMINATE AND ACCELERATE MY ACCOUNT AND TAKE OTHER ACTION.**

A. You may take the actions listed in paragraph 12.B below if any of the following events or conditions occur:

(1) I fail to meet the repayment terms of this Agreement, such as my failure to make any Minimum Payment Due to you on or before the Payment Due Date;

(2) I engage at any time in fraud or material misrepresentation in connection with my Account, whether in any application, in this Agreement or in the Mortgage;

(3) I sell or transfer title to the Real Property without first obtaining your written permission;

(4) I fail to maintain insurance on the Real Property as required under this Agreement or the Mortgage;

(5) I act or fail to act and as a result a lien senior to the lien of the Mortgage is filed against the Real Property;

(6) I die and I am not survived by another person obligated as a Borrower under this Agreement;

(7) All or part of the Real Property is taken through eminent domain, condemnation or similar government taking;

(8) A prior lienholder on the Real Property begins foreclosure under its security document;

(9) The Real Property is used for an illegal purpose which could subject the Real Property to seizure;

(10) I fail to pay taxes on the Real Property; or

(11) My action or inaction adversely affects the Real Property or your rights in the Real Property. Such action or inaction could include, for example, the following:

(a) A judgment is filed against me;

(b) I commit waste or otherwise destructively use or fail to maintain the Real Property;



"ORIGINAL"

Initials: ______

(c) I die and I am survived by another person obligated as a Borrower under this Agreement; or

(d) I move out of the Real Property.

B. If an event described in paragraph 12.A above occurs, subject to any notice or other limitation of applicable law, you may do any combination of the following things:

(1) you may terminate any of my rights under my Account;

(2) you may temporarily or permanently refuse to make any additional loans;

(3) you may declare all sums owing under this Agreement and any other agreement I have made with you to be immediately due and payable;

(4) you may foreclose the Mortgage;

(5) you may reduce my Credit Limit; and

(6) you may take any other action permitted by this Agreement, by law or in equity.

**13. MY IMPORTANT OBLIGATIONS.** I agree that:

A. I will pay all of my existing and future debts to you under any existing or future agreement with you and I will pay all of my existing and future debts to my other creditors as they become due and will not allow a creditor to obtain a judgment against me.

B. I will not permit any person or entity to levy upon, attach, garnish or otherwise take any money, account or other property in your possession that belongs to me.

C. From time to time, if requested, I will supply you with current financial information about me.

D. I have not made and will not make any misrepresentation in connection with my Account whether in my application, in this Agreement, or in the Mortgage.

E. I will not permit a receiver, sequestrator, liquidator, trustee, guardian, conservator or other judicial representative to be appointed for me or any of my property or for the Real Property.

F. I will not use or allow use of the Real Property for any illegal purpose.

G. I will not move out of the Real Property.

H. I will not permit a lien to be filed which takes priority over the Mortgage for future advances made under this Agreement.

I. I will not break any promise made in this Agreement or in the Mortgage such as:

(1) my promise not to exceed my Credit Limit; and

(2) my "Important Obligations" listed in the Mortgage.

J. Before you renew a Draw Period or increase my Credit Limit on my Account, I may need to execute additional documents in order to secure the payment of any loans advanced during any renewed Draw Period or under the increased Credit Limit.

**14. COSTS OF COLLECTION.** Subject to any limits of applicable law, I must pay for your reasonable and actual costs of collection, or foreclosure such as your court costs and reasonable attorney's or trustee's fees. Periodic finance charges will continue to accrue at the rates provided in this Agreement before and after I default and before and after you obtain a judgment against me.

**15. MY RIGHTS TO TERMINATE MY RIGHTS TO OBTAIN LOANS.**

A. Termination by Me. I may terminate my right to obtain loans by sending you a written notice which will become effective upon receipt by you. If more than one person signs this Agreement as Borrower, my right to obtain loans may be terminated by written notice pursuant to this paragraph 15.A signed by any one or more of such persons. I may also suspend my right to obtain loans pursuant to paragraph 11.D above.

"ORIGINAL"

LOAN #:

B. Termination by You. My right to future advances under my Account will terminate at the end of the Draw Period or any renewed Draw Period if not sooner upon your exercise of your termination or suspension rights under paragraphs 11.B or 12.B above or my exercise of my suspension or termination rights under paragraphs 11.D or 15.A above.

C. Effect of Termination. Upon termination or suspension of my Account, whether by you or by me, I must continue to pay the "Minimum Payment Due" on or before my "Payment Due Dates" until all amounts owed to you under this Agreement are paid in full. However, I may be required to repay all my obligations to you immediately if you exercise your rights under paragraph 12.B above. I must return unused Equity Credit Line Checks to you upon termination.

**16. CHANGES TO AGREEMENT.**

A. You may change this Agreement to the extent not prohibited by federal or state law, such as the changes listed as follows:

(1) if the original Index is no longer available, you may change the Index and Margin;

(2) you may make any change I agree to in writing;

(3) you may make a change which is unequivocally beneficial to me, such as offering me more minimum payment options, extensions or renewals of my Account, reductions in the rate or fees, and additional means to access loans; and

(4) you may make insignificant changes, such as changing the address to which payments must be sent, name changes, operational changes involving the billing cycle date, the date the Minimum Payment is due, the day of the month on which Index values are measured to determine my rate, your rounding rules and the balance computation method.

B. If required by applicable law, you will mail me notice of such a change before the effective date of the change. The change will be effective as to any existing unpaid balance and as to any future transactions under this Agreement.

**17. OTHER PROVISIONS.**

A. Third Parties. This Agreement obligates me and my estate, heirs and personal representatives. This Agreement benefits you and your successors and assigns. You may add or release parties, or permit the addition or substitution of real property collateral that secures this Agreement, or modify, extend or amend this Agreement without in any way affecting my or any non-borrower co-owner's obligations under this Agreement. My rights under this Agreement belong only to me, I cannot transfer or assign them to anyone else. You may transfer and assign your rights and obligations under this Agreement and the Mortgage at any time without my consent.

B. Additional Credit Reports and Appraisals. I authorize you to conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) concerning me, the Real Property and the Mortgage as you may deem necessary from time to time. I will cooperate in having the Real Property reappraised.

C. Tax Deductibility. I know that I should consult a tax adviser regarding the deductibility of interest and charges.

D. Applicable Law. I agree that this Agreement is to be governed by federal law and, to the extent not preempted by federal law, by the laws of the state where the Real Property is located.

E. Application of Payments. You may apply payments and proceeds of the Real Property in such order as you shall deem advisable or as otherwise required by applicable law.

F. Failure to Perform. If I violate or fail to perform any term or condition of this Agreement (or the Mortgage), you may (but are under no obligation to) perform on my behalf. All costs you incur will be added to the unpaid principal of my Account and finance charges will be figured at the rates described above. I agree to pay these costs and finance charges on demand. Your performance of any of my obligations will not be a waiver of any of your rights or remedies under this Agreement.

G. Waiver of Jury Trial. I waive my right to a jury trial.

"ORIGINAL"

LOAN #: 1

H. Complete Understanding of the Parties. There are no oral agreements concerning this Agreement. This Agreement will not be amended or modified orally. If any provision of this Agreement is held to be void or unenforceable, the rest of this Agreement shall remain in effect.

I. Waiver of Notice. I waive presentment, demand, protest, notice of default, nonpayment, partial payments and all other notices and formalities in connection with the delivery, acceptance, performance, default or enforcement of this Agreement, except those notices that are required by federal Regulation Z.

J. Meaning of Words. All words in this Agreement will be read to be of such gender and number as the context may require. The section headings in this Agreement are for convenience and do not limit or amend any of the Agreement's provisions. Any list of conditions or events in this Agreement preceded by the phrase "such as" is not intended as a full or comprehensive list, but merely as a set of examples of such conditions or events. Other conditions or events are intended to be included to the fullest extent permitted under federal and state law, even if different from the listed conditions or events.

K. Payment Marked "Payment in Full". I agree not to submit any checks to you in payment of my Account marked "Payment in Full" or similar wording unless the amount of the check is equal to the total amount then owing on my Account. If I do submit a check to you marked "Payment in Full" or similar wording for a sum less than the total amount then owing on my Account, you may accept it in partial payment of my Account but will not be bound by the "Payment in Full" or similar notation. **Communications concerning a dispute as to amounts owing on my Account, including any checks submitted to you as full satisfaction of my Account, must be sent to**
COUNTRYWIDE HOME LOANS, INC.
P.O. Box 5170, Simi Valley, CA 93062-5170

L. Enforcement. You can accept any late or partial payment or otherwise waive or delay enforcing your rights under this Agreement and still exercise your rights at a later time.

M. Notices. Except for any notice required under applicable law to be given in another manner, (a) any notice to me provided for in this Agreement shall be given by delivering it or by mailing such notice to me by regular first class mail, addressed to me at my last address appearing on your records or at such other address as I may designate by written notice to you as provided in this paragraph 17.M and (b) any notice to you provided for in this Agreement shall be given by mailing such notice to you by certified mail, return receipt requested, at
COUNTRYWIDE HOME LOANS, INC.
P.O. Box 5170, Simi Valley, CA 93062-5170
or to such other address as you may designate by written notice to me as provided in this paragraph 17.M.

N. Riders/Addenda. The covenants and agreements of each of the riders/addenda checked below are incorporated into and supplement and amend the terms of this Agreement.

[ ] No Cost Addendum
[X] Fee Addendum
[X] Billing Rights Statement
[ ] ____________ Rider
[ ] ____________

BY SIGNING BELOW, (1) I AGREE THAT I HAVE READ ALL PAGES OF THIS AGREEMENT INCLUDING ANY RIDERS/ADDENDA, (2) I AGREE AND INTEND TO BE LEGALLY BOUND BY ALL OF ITS TERMS AND CONDITIONS, INCLUDING ANY TERMS AND CONDITIONS LISTED IN ANY RIDERS/ADDENDA, AND (3) I ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT AND ANY RIDERS/ADDENDA. I ALSO ACKNOWLEDGE THAT I RECEIVED A COPY OF YOUR HOME EQUITY EARLY DISCLOSURE ENTITLED, "IMPORTANT TERMS OF OUR HOME EQUITY LINE OF CREDIT", THE HOME EQUITY BROCHURE ENTITLED, "WHEN YOUR HOME IS ON THE LINE" AND TWO COPIES OF THE HOME EQUITY LINE OF CREDIT NOTICE OF RIGHT TO CANCEL.

_______________________________ 5/31/07
Borrower: ALAN JAHR Date

_______________________________
Borrower: Date

"ORIGINAL"

_______________________________
Borrower: Date

_______________________________
Borrower: Date

PAY TO THE ORDER OF
COMMUNITY RESTORATION CORPORATION
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.
BY: Michele Sjolander
MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

COVER SHEET REV 02-14-06

**ERIE COUNTY CLERKS OFFICE**

**County Clerk's Recording Page**

Return To:

US RECORDINGS INC
2925 COUNTRY DR

ST PAUL MN 55117-1060

Party 1:
**JAHR ALAN**

Party 2:
**COUNTRYWIDE HOME LOANS INC**

Book: **13356** Page: **4787**
Page Count: **7**
Doc Type: **MTG 1-2 BANK**
Rec Date: **06/20/2007**
Rec Time: **12:31:07 PM**
Control #: **2007131838**
User ID: **diane**
Trans Num:
DEED SEQ:
MTG SEQ: **I**
UCC:
SCAR:
INDEX:

| **Recording Fees:** | |
|---|---|
| RECORDING | $38.00 |
| COE COUNTY | 1.00 |
| BASIC | $216.00 |
| ADDL | $83.00 |
| NFTA MT | $108.00 |
| COE STATE GENERAL | $14.25 |
| COE STATE RM | $4.75 |
| **Total:** | **$465.00** |

| **Consideration Amount:** | **$43,200.00** |
|---|---|
| BASIC | **$216.00** |
| SONYMA | **$0.00** |
| ADDL | **$83.00** |
| NFTA MT | **$108.00** |
| TRANSFER | **$0.00** |
| NFTA TT | **$0.00** |

[redacted] **JAHR** **A**

[redacted]

**STATE OF NEW YORK**
**ERIE COUNTY CLERK'S OFFICE**

**WARNING - THIS SHEET CONSTITUTES THE CLERK'S ENDORSEMENT, REQUIRED BY SECTIONS 319&316-a (5) OF THE REAL PROPERTY LAW OF THE STATE OF NEW YORK. DO NOT DETACH. THIS IS NOT A BILL.**

**Kathleen C. Hochul**
**County Clerk**

US Recordings, Inc.
2925 Country Drive
St. Paul, MN 55117

Prepared By:
DANIEL WALLS

[Space Above This Line For Recording Data]

[Doc ID #]

**THIS MORTGAGE IS A CREDIT LINE MORTGAGE AS DEFINED IN SECTION 281 OF THE NEW YORK REAL PROPERTY LAW. IT SECURES AN INDEBTEDNESS UNDER THE AGREEMENT WHICH REFLECTS THE FACT THAT THE PARTIES REASONABLY CONTEMPLATE ENTERING INTO A SERIES OF ADVANCES OR ADVANCES, PAYMENTS, AND READVANCES.**

# MORTGAGE
(Line of Credit)

MIN

THIS MORTGAGE, dated MAY 31, 2007 , is between
ALAN JAHR

residing at
4792 CUBIST CT, OCEANSIDE, CA 92057 ,
the person or persons signing as "Mortgagor(s)" below and hereinafter referred to as "we," "our," or "us" and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") a Delaware corporation, with an address of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE "MORTGAGEE" OF RECORD** and is acting solely as nominee for
COUNTRYWIDE HOME LOANS, INC.
("Lender" or "you") and its successors and assigns. Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613

MORTGAGED PREMISES: In consideration of the loan hereinafter described, we hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the premises located at:

19 PHYLLIS AVE, BUFFALO
Street, Municipality

ERIE — New York 14215-2823 (the "Premises").
County — ZIP

Section: ____________ Block: ____________ Lot: ____________ Unit: ____________



[redacted] [redacted]

DOC ID #:

and further described as:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Borrower's Statement Regarding the Premises [check box as applicable]
[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.
[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.
[ ] This Security Instrument does not cover real property improved as described above.
In addition, the Premises includes all buildings and other improvements now or in the future on the Premises and all rights and interests which derive from our ownership, use or possession of the Premises and all appurtenances thereto.

WE UNDERSTAND and agree that MERS is a separate corporation acting solely as nominee for Lender and Lender's successors and assigns, and holds only legal title to the interests granted by us in this Mortgage, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing or canceling this Mortgage.

LOAN: This Mortgage will secure your loan to us in the principal amount of $ 43,200.00 or so much there of as may be advanced and readvanced from time to time to
ALAN JAHR

the Borrower(s) under the Home Equity Credit Line Agreement and Disclosure Statement (the "Note") dated MAY 31, 2007 , plus interest and costs, late charges and all other charges related to the loan, all of which sums are repayable according to the Note. This Mortgage will also secure the performance of all of the promises and agreements made by us and each Borrower and Co-Signer in the Note, all of our promises and agreements in this Mortgage, any extensions, renewals, amendments, supplements and other modifications of the Note, and any amounts advanced by you under the terms of the section of this Mortgage entitled "Our Authority To You." Loans under the Note may be made, repaid and remade from time to time in accordance with the terms of the Note and subject to the Credit Limit set forth in the Note. The Loans secured by this Mortgage have a variable interest rate feature, and the annual percentage rate (corresponding to the periodic rate) and the minimum monthly payment may increase or decrease as a result.

OWNERSHIP: We are the sole owner(s) of the Premises. We have the legal right to mortgage the Premises to you.

OUR IMPORTANT OBLIGATIONS:

(a) TAXES: We will pay all real estate taxes, assessments, water charges and sewer rents relating to the Premises when they become due. We will not claim any credit on, or make deduction from, the loan under the Note because we pay these taxes and charges. We will provide you with proof of payment upon request.

(b) MAINTENANCE: We will maintain the building(s) on the Premises in good condition. We will not make major changes in the building(s) except for normal repairs. We will not tear down any of the building(s) on the Premises without first getting your consent. We will not use the Premises illegally. If this Mortgage is on a unit in a condominium or a planned unit development, we shall perform all of our obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent documents.

(c) INSURANCE: We will keep the building(s) on the Premises insured at all times against loss by fire, flood and any other hazards you may specify. We may choose the insurance company, but our choice is subject to your reasonable approval. The policies must be for at least the amounts and the time periods that you specify. We will deliver to you upon your request the policies or other proof of the insurance. The policies must name you as "mortgagee" and "loss-payee" so that you will receive payment on all insurance claims, to the extent of your interest under this Mortgage, before we do. The insurance policies must also provide that you be given not less than 10 days prior written notice of any cancellation or reduction in coverage, for any reason. Upon request, we shall deliver the policies, certificates or other evidence of insurance to you. In the event of loss or damage to the Premises, we will immediately notify you in writing and file a proof of loss with the insurer. You may file a proof of loss on our behalf if we fail or refuse to do so. You may also sign our name to any check, draft or other order for the payment of insurance proceeds in the event of loss or damage to the Premises. If you receive payment of a claim, you will have the right to choose to use the money either to repair the Premises or to reduce the amount owing on the Note.

(d) CONDEMNATION: We assign to you the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Premises, or part thereof, or for conveyance in lieu of condemnation, all of which shall be paid to you, subject to the terms of any Prior Mortgage.

(e) SECURITY INTEREST: We will join with you in signing and filing documents and, at our expense, in doing whatever you believe is necessary to perfect and continue the perfection of your lien and security interest in the Premises. It is agreed that the Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the Note secured hereby.

(f) OUR AUTHORITY TO YOU: If we fail to perform our obligations under this Mortgage, you may, if you choose, perform our obligations and pay such costs and expenses. You will add the amounts you advance to the sums owing on the Note, on which you will charge interest at the interest rate set forth in the Note. If, for example, we fail to honor our promises to maintain insurance in effect, or to pay filing fees, taxes or the costs necessary to keep the Premises in good condition and repair or to perform any of our other agreements with you, you may, if you choose, advance any sums to satisfy any of our agreements with you and charge us interest on such advances at the interest rate set forth in the Note. This Mortgage secures all such advances. Your payments on our behalf will not cure our failure to perform our promises in this Mortgage. Any replacement insurance that you obtain to cover loss or damages to the Premises may be limited to the amount owing on the Note plus the amount of any Prior Mortgages.

(g) PRIOR MORTGAGE: If the provisions of this paragraph are completed, this Mortgage is subject and subordinate to a prior mortgage dated and given by us to

as mortgagee, in the original amount of $ 0.00 (the "Prior Mortgage"). We shall not increase, amend or modify the Prior Mortgage without your prior written consent and shall upon receipt of any written notice from the holder of the Prior Mortgage promptly deliver a copy of such notice to you. We shall pay and perform all of our obligations under the Prior Mortgage as and when required under the Prior Mortgage.

(h) HAZARDOUS SUBSTANCES: We shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Premises. We shall not do, nor allow anyone else to do, anything affecting the Premises that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Premises of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Premises. As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Premises are located that relate to health, safety or "Environmental Law" means federal laws and laws of the jurisdiction where the Premises are located that relate to health, safety or environmental protection.

(i) SALE OF PREMISES: We will not sell, transfer ownership of, mortgage or otherwise dispose of our interest in the Premises, in whole or in part, or permit any other lien or claim against the Premises without your prior written consent.

(j) INSPECTION: We will permit you to inspect the Premises at any reasonable time.

(k) NEW YORK LIEN LAW: We will, in compliance with Section 13 of the New York Lien Law, make sure that the loans secured by this Mortgage are received as a Trust Fund to be applied first for the purpose of paying the cost of any improvements to the Premises and will apply the same first to the payment of the cost of the improvements before using any part of the total of the same for any other purpose.

NO LOSS OF RIGHTS: The Note and this Mortgage may be negotiated or assigned by you without releasing us or the Premises. You may add or release any person or property obligated under the Note and this Mortgage without losing your rights in the Premises.

DEFAULT: Except as may be prohibited by applicable law, and subject to any advance notice and cure period if required by applicable law, if any event or condition of default as described in the Note occurs, you may foreclose upon this Mortgage. This means that you may arrange for the Premises to be sold, as provided by law, in order to pay off what we owe on the Note and under this Mortgage. If the money you receive from the sale is not enough to pay off what we owe you, we will still owe you the difference which you may seek to collect from us in accordance with applicable law. In addition, you may, in accordance with applicable law, (i) enter on and take possession of the Premises; (ii) collect the rental payments, including over-due rental payments, directly from tenants; (iii) manage the Premises; and (iv) sign, cancel and change leases. We agree that the interest rate set forth in the Note will continue before and after a default, entry of a judgment and foreclosure. In addition, you shall be entitled to collect all reasonable fees and costs actually incurred by you in proceeding to foreclosure, including, but not limited to, reasonable attorneys fees and costs of documentary evidence, abstracts and title reports.

ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER: As additional security, we assign to you the rents of the Premises. You or a receiver appointed by the courts shall be entitled to enter upon, take possession of and manage the Premises and collect the rents of the Premises including those past due.

WAIVERS: To the extent permitted by applicable law, we waive and release any error or defects in proceedings to enforce this Mortgage and hereby waive the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale and homestead exemption.

BINDING EFFECT: Each of us shall be fully responsible for all of the promises and agreements in this Mortgage. Until the Note has been paid in full and your obligation to make further advances under the Note has been terminated, the provisions of this Mortgage will be binding on us, our legal representatives, our heirs and all future owners of the Premises. This Mortgage is for your benefit and for the benefit of anyone to whom you may assign it. Upon payment in full of all amounts owing to you under the Note and this Mortgage, and provided any obligation to make further advances under the Note has terminated, this Mortgage and your rights in the Premises shall end.

NOTICE: Except for any notice required under applicable law to be given in another manner, (a) any notice to us provided for in this Mortgage shall be given by delivering it or by mailing such notice by regular first class mail addressed to us at the last address appearing in your records or at such other address as we may designate by notice to you as provided herein, and (b) any notice to you shall be given by certified mail, return receipt requested, to your address at
For MERS:
P.O. Box 2026, Flint, MI 48051-2026
For Lender:
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
or to such other address as you may designate by notice to us. Any notice provided for in this Mortgage shall be deemed to have been given to us or you when given in the manner designated herein.

RELEASE: Upon payment of all sums secured by this Mortgage and provided your obligation to make further advances under the Note has terminated, you shall discharge this Mortgage without charge to us, except that we shall pay any fees for recording of a satisfaction of this Mortgage.

GENERAL: You can waive or delay enforcing any of your rights under this Mortgage without losing them. Any waiver by you of any provisions of this Mortgage will not be a waiver of that or any other provision on any other occasion.

DOC ID #:

THIS MORTGAGE has been signed by each of us under seal on the date first above written.

Mortgagor: ALAN JAHR

Mortgagor:

Mortgagor:

Mortgagor:

California
STATE OF ~~NEW YORK~~ )
County of San Diego )ss.
)

On the 31st day of May in the year 2007 before me, the undersigned, a notary public in and for said state, personally appeared Alan Jahr

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he executed the same in his capacity(ies), and that by his signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

My Commission Expires:
1/12/11

Notary Public

Tax Map Information: 8911311

CARI HATFIELD
COMM. # 1715898
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
MY COMM. EXP. JAN. 12, 2011

# EXHIBIT A

ALL THAT TRACT OR PARCEL OF LAND, SITUATE IN THE CITY OF BUFFALO, COUNTY OF ERIE AND STATE OF NEW YORK, BEING PART OF LOT NO.: FORTY-FIVE (45), TOWNSHIP ELEVEN (11), RANGE SEVEN (7) OF THE HOLLAND LAND COMPANY'S SURVEY AND FURTHER DISTINGUISHED AS SUBDIVISION LOT NUMBER ONE HUNDRED AND NINETY-THREE (193), AS SHOWN ON MAP FILED IN ERIE COUNTY CLERK'S OFFICE UNDER COVER NUMBER NINE HUNDRED AND EIGHTY-TWO (982), SAID LOT BEING THIRTY (30) FEET FRONT AND REAR BY ONE HUNDRED EIGHTY-TWO (982), SAID LOT BEING THIRTY (30) FEET FRONT AND REAR BY ONE HUNDRED AND FIVE (105) FEET IN DEPTH, BEING LOCATED ON THE SOUTH SIDE OF PHYLLIS AVENUE, REFERENCE BEING MADE AND HAD TO SAID MAP FOR FURTHER DESCRIPTION.

TAX ID #: 90.41-9-3

BY FEE SIMPLE DEED FROM THOMAS MURDOCK AS SET FORTH IN DEED BOOK 11099, PAGE 1483 AND RECORDED ON 8/5/2005, ERIE COUNTY RECORDS.

THE SOURCE DEED AS STATED ABOVE IS THE LAST RECORD OF VESTING FILED FOR THIS PROPERTY. THERE HAVE BEEN NO VESTING CHANGES SINCE THE DATE OF THE ABOVE REFERENCED SOURCE.

[redacted]

LINE/CREDIT MTG.
LOAN# [redacted]
US Recordings

ERIE COUNTY CLERK'S OFFICE

County Clerk's Recording Page

Return to:
CORELOGIC
450 E Boundry St
Chapin, SC 29036-9911

**Book Type: M Book: 13584 Page: 2335**
Page Count: 2
Doc Type: ASSIGN-MTG
Rec Date: 06/04/2012
Rec Tim: 04:12:26 PM
Control #:
UserID: Diane
Receipt#:
Document Sequence Number

Party 1:
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC NOM

Party 2:
BANK OF AMERICA NA

**Recording Fees:**

| | |
|---|---|
| Fee 1 | $30.00 |
| Fee 2 | $1.00 |
| COE STATE $14.25 GEN | $14.25 |
| COE STATE $4.75 RM | $4.75 |
| MARKOFF FEE | $0.50 |

**Consideration Amount:**

| | |
|---|---|
| BASIC | $0.00 |
| SONYMA | $0.00 |
| ADDL | $0.00 |
| NFTA MT | $0.00 |
| TRANSFER | $0.00 |
| NFTA TT | $0.00 |

**Total: $50.50**

STATE OF NEW YORK
ERIE COUNTY CLERK'S OFFICE

WARNING – THIS SHEET CONSTITUTES THE CLERK'S ENDORSEMENT REQUIRED BY SECTION 319&316-a (5) OF THE REAL PROPERTY LAW OF THE STATE OF NEW YORK. DO NOT DETACH. THIS IS NOT A BILL.

Christopher L. Jacobs
COUNTY CLERK

Recording Requested By:
**Bank of America**

Prepared By: **Bank of America**
**800-444-4302**
When recorded mail to:
**CoreLogic**
**450 E. Boundary St.**
**Attn: Release Dept.**
**Chapin, SC 29036**

DocID# [redacted]
Property Address:
**19 Phyllis Ave**
**Buffalo, NY 14215-2823**
Property Location:
**City of BUFFALO**
NY0v3M-AM ........ 5/9/2012

This space for Recorder's use

2/VS

MIN #: MERS Phone #:

# ASSIGNMENT OF MORTGAGE

For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC.**, the undersigned holder of the Mortgage described below (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** and whose address is **4500 PARK GRANADA , MSN # SVB-314, CALABASAS, CA 91302-1613** does hereby grant, sell, assign, transfer and convey unto **BANK OF AMERICA, N.A** whose address is **400 NATIONAL WAY, SIMI VALLEY, CA 93065** all beneficial interest under that certain security instrument described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said security instrument.

| | |
|---|---|
| Original Lender: | **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC.** |
| Made By: | **ALAN JAHR** |
| Date of Mortgage: | **5/31/2007** |
| Original Loan Amount: | **$43,200.00** |

Section: **90.41** Lot: **3** Block: **9** Unit: **N/A**

Recorded in **Erie County, NY** on: **6/20/2007**, book **13356**, page **4787** and instrument number **2007131838**

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

This Mortgage has not been assigned unless otherwise stated below:

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on Dated: MAY 11 2012

[redacted] JAHR A

[redacted]

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC.**

By: ______________________

Carmen Dena, Assistant Secretary

**State of California**
**County of Ventura**

On 5-11-12 before me, Victoria Cook, Notary Public, personally appeared CARMEN DENA, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: Victoria Cook
My Commission Expires: 6/28/12

VICTORIA COOK
Commission # 1801310
Notary Public - California
Ventura County
My Comm. Expires Jun 28, 2012

(Seal)

ERIE COUNTY CLERK'S OFFICE

County Clerk's Recording Page

Return to:
ORION FINANCIAL GROUP INC
2860 EXCHANGE BLVD STE 100
SOUTHLAKE, TX 76092

**Book Type: M Book: 13737 Page: 4569**
Page Count: 2
Doc Type: ASSIGN-MTG
Rec Date: 09/14/2015
Rec Time: 04:11:16 PM
Control #: 2015187473
UserID: Loretta
Trans #: 15148609
Document Sequence Number

Party 1:
BANK OF AMERICA NA

Party 2:
COMMUNITY RESTORATION CORPORATION

**Recording Fees:**

| | |
|---|---|
| RECORDING | $30.00 |
| COE CO $1 RET | $1.00 |
| COE STATE $14.25 GEN | $14.25 |
| COE STATE $4.75 RM | $4.75 |
| MARKOFF FEE | $0.50 |

**Consideration Amount:**

| | |
|---|---|
| BASIC MT | $0.00 |
| SONYMA MT | $0.00 |
| ADDL MT/NFTA | $0.00 |
| SP MT/M-RAIL | $0.00 |
| NY STATE TT | $0.00 |
| ROAD FUND TT | $0.00 |

**Total: $50.50**

STATE OF NEW YORK
ERIE COUNTY CLERK'S OFFICE

WARNING – THIS SHEET CONSTITUTES THE CLERK'S ENDORSEMENT REQUIRED BY SECTION 319&316-a (5) OF THE REAL PROPERTY LAW OF THE STATE OF NEW YORK. DO NOT DETACH. THIS IS NOT A BILL.

Christopher L. Jacobs
County Clerk

PREPARED BY AND RETURN TO:
M. E. Wileman
2860 Exchange Blvd. # 100
Southlake, TX 76092

**Assignment of Mortgage** Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, BANK OF AMERICA, N.A. By: ClearSpring Loan Services, Inc. Its Attorney in Fact 1800 Tapo Canyon Road, Simi Valley, CA 93063 (Assignor) by these presents does assign, and set over, without recourse, to COMMUNITY RESTORATION CORPORATION whose address is c/o ClearSpring Loan Services, Inc., 18451 Dallas Parkway, 1st Floor, Suite 100, Dallas, TX 75287 (Assignee) the described mortgage with all interest, all liens, any rights due or to become due thereon, executed by **ALAN JAHR** to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS) AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC. ITS SUCCESSORS AND ASSIGNS. Said mortgage dated 5/31/2007 is recorded in the State of NY, County of Erie on 6/20/2007 as Liber 13356 Page 4787 AMOUNT: $ 43,200.00 Property Address: 19 PHYLLIS AVE, BUFFALO, NY 14215

This Assignment is not subject to the requirements of Section 275 of the Real Property law, because it is an assignment within the secondary mortgage market.

IN WITNESS WHEREOF, the undersigned corporation/trust has caused this instrument to be executed by its proper officer. Executed on: 8/12/15

BANK OF AMERICA, N.A. By: ClearSpring Loan Services, Inc. Its Attorney in Fact

By: [signature]
Janice Kindel
Vice President

JAHR OFG8 [redacted]

State of Texas, County of Collin
On 8/12/15, before me, the undersigned, personally appeared Janice Kindel, Vice President, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s), or th [redacted] person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the County of Collin, State of Texas.

[signature]

Notary public, Jarod Knight
My commission expires: 8/14/17

JAROD KNIGHT
Notary Public, State of Texas
My Commission Expires
August 14, 2017

4-1-1

[redacted]

NY Erie CLR/CRCBACNY/AOM

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Walter Alan Jahr** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 (Spouse if, filing) | **Claudine Emma Jahr** | | |
| | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF CALIFORNIA | | |
| Case number (if known) | | | |

☐ Check if this is an amended filing

Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).**

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

## Part 1: List All Secured Claims

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | *Column A* **Amount of claim** Do not deduct the value of collateral. | *Column B* **Value of collateral that supports this claim** | *Column C* **Unsecured portion** If any |
|---|---|---|---|
| 2.1 Clearspring | $61,819.64 | $38,107.00 | $23,712.64 |
| 2.2 Clearspring | $39,792.00 | $41,075.00 | $21,410.00 |

**2.1 Clearspring**
Creditor's Name

**PO Box 5869 Dept #446**
**Houston, TX 77210**
Number, Street, City, State & Zip Code

**Describe the property that secures the claim:**
**171 Hastings Ave Buffalo, NY 14215**
**Erie County**
**4 bed/2bath 924 sq ft**

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset) **First Mortgage**

**Date debt was incurred** 2007

**Last 4 digits of account number** 9443

**2.2 Clearspring**
Creditor's Name

**PO Box 5869 Dept #446**
**Houston, TX 77210**
Number, Street, City, State & Zip Code

**Describe the property that secures the claim:**
**172 Hagen St Buffalo, NY 14215**
**Erie County**
**4 bed/1 bath 1115 sq ft**

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset) **First Deed of Trust**

**Date debt was incurred** 2007

**Last 4 digits of account number** 9442


Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

Debtor 1 **Walter Alan Jahr** — First Name / Middle Name / Last Name

Debtor 2 **Claudine Emma Jahr** — First Name / Middle Name / Last Name

Case number (if know)

---

**2.3 Erie County Real Prop Tax Svcs**
Creditor's Name

**Room 100**
**95 Franklin St**
**Buffalo, NY 14202**
Number, Street, City, State & Zip Code

Describe the property that secures the claim: **$244.00** | **$38,107.00** | **$244.00**

**171 Hastings Ave Buffalo, NY 14215**
**Erie County**
**4 bed/2bath 924 sq ft**

**As of the date you file, the claim is:** Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Who owes the debt?** Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ■ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ■ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.
- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ☐ Other (including a right to offset)

**Date debt was incurred** **2014** **Last 4 digits of account number** **6000**

---

**2.4 Erie County Real Prop Tax Svcs**
Creditor's Name

**Room 100**
**95 Franklin St**
**Buffalo, NY 14202**
Number, Street, City, State & Zip Code

Describe the property that secures the claim: **$223.00** | **$41,075.00** | **$0.00**

**172 Hagen St Buffalo, NY 14215**
**Erie County**
**4 bed/1 bath 1115 sq ft**

**As of the date you file, the claim is:** Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Who owes the debt?** Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ■ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ■ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.
- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ☐ Other (including a right to offset)

**Date debt was incurred** **2015** **Last 4 digits of account number** **9000**

---

**2.5 Erie County Tax**
Creditor's Name

**Room 100**
**95 Franklin Street**
**Buffalo, NY 14202**
Number, Street, City, State & Zip Code

Describe the property that secures the claim: **$244.10** | **$38,107.00** | **$244.10**

**171 Hastings Ave Buffalo, NY 14215**
**Erie County**
**4 bed/2bath 924 sq ft**

**As of the date you file, the claim is:** Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Who owes the debt?** Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ■ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ■ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.
- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ■ Other (including a right to offset) **Property Tax Lien**



Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

Debtor 1 Walter Alan Jahr
First Name Middle Name Last Name
Debtor 2 Claudine Emma Jahr
First Name Middle Name Last Name

Case number (if know)

**Date debt was incurred** 2016 **Last 4 digits of account number** ings

---

**2.6 Erie County Tax**
Creditor's Name

Room 100
95 Franklin Street
Buffalo, NY 14202
Number, Street, City, State & Zip Code

**Describe the property that secures the claim:** $223.00 $41,075.00 $0.00

172 Hagen St Buffalo, NY 14215
Erie County
4 bed/1 bath 1115 sq ft

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset) Property Tax Lien

**Date debt was incurred** **Last 4 digits of account number** agen

---

**2.7 Ocwen Loan Sevicing Llc**
Creditor's Name
Attn: Research Dept
1661 Worthington Rd
Ste 100
West Palm Beach, FL 33409
Number, Street, City, State & Zip Code

**Describe the property that secures the claim:** $322,096.84 $470,000.00 $0.00

4792 Cubist Ct Oceanside, CA 92057
San Diego County

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

**Date debt was incurred** Opened 7/01/04 Last Active 1/05/16 **Last 4 digits of account number** 6294

---

**2.8 Pacific Marine Credit Union**
Creditor's Name

1278 Rocky Point Drive
Oceanside, CA 92056
Number, Street, City, State & Zip Code

**Describe the property that secures the claim:** $8,122.52 $10,500.00 $0.00

2010 Lexus ES 58000 miles
Fair to poor condition - needs approx $3000 in work & repairs.

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)



Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

Debtor 1 **Walter Alan Jahr** (First Name / Middle Name / Last Name)
Debtor 2 **Claudine Emma Jahr** (First Name / Middle Name / Last Name)
Case number (if know)

☐ At least one of the debtors and another
■ **Check if this claim relates to a community debt**

☐ Judgment lien from a lawsuit
■ Other (including a right to offset) **Automobile Lien**

**Date debt was incurred** 2015 **Last 4 digits of account number** 4822

---

**2.9 Servicing Corporation**
Creditor's Name

323 5th Street
Eureka, CA 95501
Number, Street, City, State & Zip Code

**Describe the property that secures the claim:** $62,923.26 $40,954.00 $21,969.26

19 Phyllis Ave Buffalo, NY 14215
Erie County
*PROPERTY NOT INSURED*
Property was foreclosed under deficient notice. Insurance lapsed upon foreclosure but not reinstated when foreclosure voided.

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset) **First Mortgage**

**Date debt was incurred** **Last 4 digits of account number** 5804

---

**2.10 The Partnership Fcu**
Creditor's Name

550 17th Street Nw
Washington, DC 20429
Number, Street, City, State & Zip Code

**Describe the property that secures the claim:** $31,427.64 $470,000.00 $0.00

4792 Cubist Ct Oceanside, CA 92057
San Diego County

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

**Date debt was incurred** Opened 10/01/05 Last Active 2/05/16 **Last 4 digits of account number** 5160

---

| | |
|---|---|
| **Add the dollar value of your entries in Column A on this page. Write that number here:** | **$527,116.00** |
| **If this is the last page of your form, add the dollar value totals from all pages. Write that number here:** | **$527,116.00** |

**Part 2: List Others to Be Notified for a Debt That You Already Listed**



Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

Debtor 1 **Walter Alan Jahr**
First Name Middle Name Last Name

Debtor 2 **Claudine Emma Jahr**
First Name Middle Name Last Name

Case number (if know)

**Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.**

☐ Name, Number, Street, City, State & Zip Code
**Bank of Amerca**
**PO Box 15796**
**Wilmington, DE 19886-5796**

On which line in Part 1 did you enter the creditor? **2.2**
Last 4 digits of account number ___

---

☐ Name, Number, Street, City, State & Zip Code
**Clearspring**
**18451 North Dallas Parkway**
**Suite 100**
**Dallas, TX 75287**

On which line in Part 1 did you enter the creditor? **2.1**
Last 4 digits of account number ___

---

☐ Name, Number, Street, City, State & Zip Code
**Clearspring**
**18451 North Dallas Parkway**
**Suite 100**
**Dallas, TX 75287**

On which line in Part 1 did you enter the creditor? **2.2**
Last 4 digits of account number ___

---

☐ Name, Number, Street, City, State & Zip Code
**Davidson Fink, LLP**
**28 E Main St Ste-1700**
**Rochester, NY 14614**

On which line in Part 1 did you enter the creditor? **2.9**
Last 4 digits of account number ___

---

☐ Name, Number, Street, City, State & Zip Code
**SN Servicing Corp**
**323 5th Street**
**Eureka, CA 95501**

On which line in Part 1 did you enter the creditor? **2.1**
Last 4 digits of account number ___

---

☐ Name, Number, Street, City, State & Zip Code
**SN Servicing Corporation**
**Dept 1710**
**Denver, CO 80291**

On which line in Part 1 did you enter the creditor? **2.1**
Last 4 digits of account number ___

---

☐ Name, Number, Street, City, State & Zip Code
**The Partnership FU**
**PO Box 18539**
**Washington, DC 20036-8539**

On which line in Part 1 did you enter the creditor? **2.10**
Last 4 digits of account number ___

---



Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com Best Case Bankruptcy